## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>ADRIAN GERALD LUCKHAM,<br>KAROLA ELVIRA DURETTE-<br>LUCKHAM,<br><br>               Debtors | Chapter 13<br>Case No. 10-32633-HJB |

### MEMORANDUM OF DECISION

Before the Court is a motion to amend Schedule C filed by Adrian Luckham and Karola Durette-Luckham, the debtors in this Chapter 13 case (the "Debtors"). The Debtors propose to exempt "100% of Equity" in real property constituting their residence, and the Chapter 13 trustee has objected on grounds that the exemption improperly fails to quantify the dollar amount of the claimed exemption, as required by § 522(d)(1) of the United States Bankruptcy Code.[1] In response, the Debtors argue that the Supreme Court's decision in <u>Schwab v. Reilly</u>, 130 S.Ct. 2652 (2010), allows them to exempt the property in its entirety, despite the monetary limits imposed by the Code. For the reasons stated herein, this Court now joins the growing number of bankruptcy courts that have considered the Debtors' argument and found it wanting.

---

[1] <u>See</u> 11 U.S.C. § 101 <u>et seq.</u> (the "Bankruptcy Code" or the "Code"). All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

1

I.  FACTS AND POSITIONS OF THE PARTIES

The Debtors filed their Chapter 13 case on December 30, 2010 (the "Petition Date") and filed the required schedules and statements (the "Schedules") on January 13, 2011.  In their Schedules, the Debtors disclosed their joint interest in real property located in Chicopee, Massachusetts (the "Property").  On Schedule A, the Debtors estimated the value of the Property at $185,000, and on Schedule D, the Debtors listed $200,461 in secured claims against the Property.[2]

On Schedule C-Property Claimed as Exempt, the Debtors elected the exemptions provided under § 522(d) of the Bankruptcy Code.  See 11 U.S.C. §§ 522(b), (d).[3]  On Schedule C, under the column labeled "Description of Property," the Debtors identified the Property by address, listed the Property's value as determined by municipal assessment ($167,000) and a broker's price opinion ($140,000), and stated that the value listed in the Schedules ($185,000) was the "debtors' opinion of value."  In addition, in the same descriptive column, the Debtors noted parenthetically that the "dollar figure of claimed (d)(1) exemption is $21,600.00."

Schedule C also requires debtors to specify the law under which each exemption is claimed and to state the "value of [the] claimed exemption."  With regard to the Property, the Debtors specified the law under which they claimed their exemption as "11

---

[2] Schedule D lists three secured creditors relative to the Property: PNC Mortgage with a mortgage against the Property securing a claim of $185,056; Anj Corporation, holding a judgment lien in the amount of $5,001; and "Cap One," holding a judgment lien in the amount of $10,374.

[3] Pursuant to § 522(b), debtors can choose to claim exemptions either under applicable nonbankruptcy law (e.g., the exemptions provided by Massachusetts state or other federal law) or under the set of exemptions provided by the Bankruptcy Code, found at § 522(d) (the "§ 522(d) Exemptions").  11 U.S.C. § 522(b).  While states may "opt out" of the § 522(d) Exemptions scheme, Massachusetts has not done so, "thereby allowing its residents to elect the [§ 522(d) Exemptions] list." Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318, 323 n.9 (1st Cir. 2008).

2

U.S.C. § 522(d)(1) 100% of FMV[4] per Schwab v. Reilly, 130 S.Ct. 2652, 2668 (2010)." They listed the value of the claimed exemption simply as "100%."

On February 18, 2011, the Debtors filed a Chapter 13 Plan (the "Plan") proposing to pay $925 per month over 5 years. The Plan contemplates continued monthly mortgage payments made directly to PNC Mortgage, treats the two judicial liens as unsecured claims (implying that those liens will be avoided), and proposes a 26.0576% dividend to unsecured creditors.

On March 17, 2011, the Chapter 13 trustee (the "Trustee") filed an "Objection to Confirmation of Debtors' Amended Chapter 13 Plan and Exemptions" (the "First Objection"). The Trustee's First Objection was primarily targeted at the Debtors' claimed exemption in the Property. The Trustee complained that the Debtors' claimed exemption of "100% of FMV" would exceed the $21,625 maximum amount of the exemption allowed under § 522(d)(1) and would potentially exempt all postpetition equity in the Property, which, if realized upon, should inure to the benefit of unsecured creditors.

The Debtors' response to the First Objection largely focused on one passage from the Supreme Court's recent decision in Schwab v. Reilly, 130 S.Ct. 2652, 2668 (2010), which the Debtors said "'blessed' the debtors' use of '100% of FMV,'" "where the debtors desire to exempt the asset itself and not a fixed dollar amount." Resp. to First Obj., 3, March 18, 2011, ECF No. 36. Acknowledging that the Schwab decision anticipated that an exemption claim of "100% of FMV" would potentially draw objections from the Chapter 13 trustee, the Debtors maintained that the Court should schedule an

---

[4] Although not defined in the Debtors' Schedules, the Court has assumed (consistent with the parties' assumptions) that "FMV" was intended to stand for "fair market value."

3

evidentiary hearing to determine if the exemption as claimed, based on the value of the Property on the Petition Date, *actually* exceeded the limits imposed by § 522(d). The Debtors also argued that the Trustee's concern about postpetition accrued equity was a "red herring," since any additional postpetition equity would only be relevant if the Debtors liquidated that equity through a sale or refinance of the Property.[5] Accordingly, the Debtors said the Court should focus only on the value of the Property, and thus the "value" of the claimed exemption, as of the Petition Date.

On April 14, 2011, the Court held a hearing on the Trustee's First Objection (the "First Hearing"). During that hearing, the Chapter 13 trustee argued that the Debtors, by claiming an exemption equal to the Property's fair market value, were essentially claiming a "$185,000 exemption," noting that they had not actually limited their claimed exemption to 100% of the *equity*. In response, Debtors' counsel jumped at this statement, agreeing that the Debtors' intent was to claim 100% of the *equity* as exempt. But the Court implicitly rejected the notion that changing the exemption to claim 100% of the equity would be permissible. Instead (after struggling with the parties to determine whether the exemptions as claimed were within the monetary limits imposed by § 522(d)) the Court concluded that the Debtors, by claiming a *percentage* of value as exempt, as opposed to an actual dollar figure, were essentially saying "Trustee, you figure out what [the dollar amount of the exemption] is supposed to be." First Hr'g Tr. 9:19-21, April 4, 2011, ECF No. 82.

---

[5] There are at least two other circumstances in which the postpetition accrued equity might have import. The first is where the Debtor seeks to avoid a lien as wholly unsecured. See In re Landry, -- B.R. --, No. 09-41656-HJB, 2011 WL 6209191, *5-6 (Bankr. D. Mass. Dec. 14, 2011); but see In re Sarno, -- B.R. --, No. 10-45856-MSH, 2011 WL 6736212, *2 (Bankr. D. Mass. Dec. 20, 2011). The second is where the Chapter 13 case is converted by the Debtor to Chapter 7 in bad faith. See 11 U.S.C. § 348(f)(2).

4

The Court explained that this was not the result the Supreme Court intended in Schwab, and stated that the Debtors:

> need to say . . . what's the *dollar value* that they are exempting. And if they want to add to that that they think that that's 100 per cent, then that's fine; but *they need to say how many dollars it is.* [P]utting the words "100 per cent" under the amount of value . . . doesn't permit the estate to be administered in an appropriate fashion.

Id. at 10:15-21 (emphasis supplied). Accordingly, the Trustee's First Objection was sustained, and the Debtors were ordered to file an amended Schedule C.[6]

The Debtors filed the amended Schedule C (the "Amended Schedule C"), together with a motion to amend (the "Motion to Amend") on April 22, 2011. The Amended Schedule C is identical in all respects to the original schedule, with two exceptions. The value of the claimed exemption in the Property has been changed to "100% of Equity" and the law providing the exemption is now listed as "11 U.S.C. 522(d)(1) per [Schwab v. Reilly]." Despite the Court's admonition at the First Hearing that a dollar value needed to be stated for the claimed exemption, the Debtors now maintain that by including the statement "dollar figure of claimed (d)(1) exemption is $21,600.00" in the *description* of property, they have provided sufficient information to enable the Trustee to calculate whether the available exemptions have been exceeded.

The Trustee, however, disagrees, as evidenced by the objection to the Amended Schedule C (the "Second Objection") filed on May 20, 2011. In the Second Objection, the Trustee expresses frustration with the fact that the Debtors have again failed to quantify their exemption in the "value of claimed exemption" column. Despite the Debtors' description of the exemption's value as $21,600, the Trustee argues that they

---

[6] The Trustee's objection to the Debtors' Chapter 13 plan was continued generally pending a final resolution regarding the Debtors' exemptions.

5

are, in fact, still attempting to claim an unlimited exemption in the Property by valuing the exemption at "100% of Equity."[7] Accordingly, the Trustee says, the exemption remains objectionable as potentially exceeding the available exemption under subsection (d)(1) and potentially exempting all postpetition appreciation in the Property's value. Therefore, the Trustee asks the Court to sustain her Second Objection and order the Debtors to file a further amended Schedule C.

In support of the Amended Schedule C, the Debtors rely primarily on the same arguments contained in their response to the First Objection.[8] In the Motion to Amend, the Debtors argue that placing a dollar value in the "value of claimed exemption" column would "preclude their ability to exempt 100% of the equity as of the petition date, in the event there arises a later need to calculate postpetition appreciation." Mot. to Amend, 2 ¶ 7, April 22, 2011, ECF No. 58. The Debtors continue to maintain that, under Schwab, they can "clai[m] 100% of an asset, whether its full value or its equity," and that "[a]ny other ruling contravenes the Supreme Court," Reply Brief, 10, Oct. 6, 2011, ECF No. 74, "eviscerate[ing] the debtors' right to exercise the strategy approved by the Supreme Court [in Schwab]," Resp. to Second Obj., 2. And the Debtors again assert that the Trustee now has the burden of demonstrating, at an evidentiary hearing, that the equity *as of the Petition Date* exceeds their available exemptions.

Following a hearing on the Second Objection (the "Second Hearing"), the Court

---

[7] Indeed, the Debtors have stated that "[t]he descriptive was added to aid the trustee in ascertaining the arithmetic amount of the (d)(1) exemption being claimed, *but it has no legal effect.*" Resp. to Second Obj., 7 ¶ 4, May 21, 2011, ECF No. 61 (emphasis supplied). The Court sees no reason why either the Trustee or the Court should give the Debtor's "description" of the exemption as $21,600 any more weight or import than they do themselves.

[8] In fact, the Debtors attached their response filed to the First Objection in support of their response to the Second Objection.

6

took the matter under advisement.

III. <u>DISCUSSION</u>

As a condition of plan confirmation under Chapter 13, section 1325(a)(4) "requires the Court to 'determine that unsecured creditors are to receive in the Chapter 13 case at least what they would receive in a Chapter 7 case.'" <u>In re Watkins</u>, 379 B.R. 403, 406 (Bankr. D. Mass. 2007) (quoting <u>In re Walsh</u>, 359 B.R. 389, 393 (Bankr. D. Mass. 2007)); 11 U.S.C. § 1325(a)(4).  In order to "ascertain whether non-exempt equity would be available for distribution to unsecured creditors, assuming a hypothetical chapter 7 liquidation," <u>Watkins</u>, 379 B.R. at 406, the Trustee must be able to determine the value of the Debtors' assets less the total amount of exemptions to which the Debtors would be entitled under Chapter 7, <u>id.</u> at 406 n.4 (citing <u>In re Walker</u>, 153 B.R. 565, 569 n.2 (Bankr. D. Or. 1993)).  The Trustee is thus tasked with reviewing debtors' exemption claims and timely objecting to those that she believes are inappropriate. <u>See</u> Fed. R. Bankr. P. 4003(b)(1) (objection to exemption must be filed within 30 days after the meeting of creditors is concluded or an amended schedule is filed); <u>In re Massey</u>, 455 B.R. 17, 18 (Bankr. D. Mass. 2011) (in order to preserve an objection to plan based on § 1325(a)(4) and grounded in a debtor's allegedly improper exemption claim, the Chapter 13 trustee must file a timely objection to the exemption under Bankruptcy Rule 4003(b)(1)), <u>recons. on other grounds granted</u>, No. 11-41059-MSH, Order on Mot. to Recons., ECF No. 28 (Bankr. D. Mass. Aug. 1, 2011).

On the Petition Date, the Debtors' Property became property of their bankruptcy estate, 11 U.S.C. §§ 541, 1306, subject to the Debtors' right to claim an interest in the Property as exempt. <u>Schwab</u>, 130 S.Ct. at 2657; 11 U.S.C. § 522(l). Absent an

7

objection to the exemption by an interested party, that exempt interest "will be excluded from the bankruptcy estate." Id. Unless a state has "opted out," see supra n.3, section 522(b) allows Debtors to claim either the exemptions set forth in § 522(d), or the exemptions available under relevant non-bankruptcy law. 11 U.S.C. § 522(b). Regardless of their statutory basis, however, most (if not all) exemptions can be categorized as either "in-kind" or (for lack of a better term) "limited-interest" exemptions. In-kind exemptions are those that allow a debtor to exempt "certain property . . . in full regardless of value." Schwab, 130 S.Ct. at 2662-63 (citing, as examples, 11 U.S.C. §§ 522(d)(9) (professionally prescribed health aids), 522(d)(10)(C) (disability benefits), 522(d)(7) (unmatured life insurance contracts)).

Limited-interest exemptions, in contrast, allow a debtor to exempt an "'interest' – up to a specified dollar amount – in the assets described." Id. at 2661-62. As the Schwab court explained, and repeatedly emphasized, where the exemption statute provides a limited-interest exemption, only a defined monetary interest in the property is removed from the bankruptcy estate – not necessarily the value of the entire property.[9]

---

[9] See Schwab, 130 S.Ct. at 2661-62 (most of the [§ 522(d)] categories . . . define the 'property' a debtor may 'clai[m] as exempt' as the debtor's 'interest' – up to a certain specified dollar amount – in the assets described in the category, *not* as the assets themselves.") (emphasis in original); id. at 2662 ("the Code's definition of the 'property claimed as exempt in this case is clear . . . [the Code] define[s] the 'property claimed as exempt' as an 'interest'" in the property, and not as the property *"per se"*; id. at 2663 (where "a debtor claims an exemption pursuant to provisions that . . . permit the debtor to exclude from the estate only an 'interest' in certain property, the 'property' that becomes exempt absent objection, § 522(l), is only the 'partial interest' claimed as exempt and not 'the asset as a whole'"); id. at 2664 n.11 (in rejecting dissent's argument that valuation by debtor plays a greater role in determining what is exempted, court says that that argument "lacks statutory support because the governing Code provisions phrase the exemption limit as a simple dollar amount."); id. at 2667 ("To help the debtor obtain a fresh start, the Bankruptcy Code permits him to *withdraw from the estate* certain *interests in* property, such as his car or home, *up to certain values*.") (quoting Rousey v. Jacoway, 544 U.S. 320, 325 (2005)) (emphasis supplied in Schwab) and ("title to the asset will remain with the estate pursuant to § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption") (citing In re Soost, 262 B.R. 68, 72 (B.A.P. 8th Cir. 2001));

8

Here, the Debtors elected to use the exemption provided by § 522(d)(1) to exempt the Property in its entirety. But § 522(d)(1) allows a debtor to exempt only "[t]he debtor's aggregate *interest*, not to exceed $21,625 in value, in real property." 11 U.S.C. § 522(d)(1) (emphasis supplied).[10] As in Schwab, the relevant exemption statute thus limits the Debtors' exemption to only an "interest" in the Property, and does not provide a statutory basis for the Debtors to "exempt the asset itself and not a fixed dollar amount," Resp. to Second Obj., 3. See Schwab, 130 S.Ct. at 2663. Because the language of § 522(d)(1) clearly limits the Debtors' claimed exemption in the Property to a specific dollar amount, the Court agrees with the Trustee that neither the language "100% of FMV" nor "100% of Equity" adequately circumscribes the exemption consistent with the requirements of the Bankruptcy Code.[11]

But the Debtors say that, despite the Schwab Court's repeated emphasis on the finite nature of limited-interest exemptions, the Supreme Court ultimately "sanctioned" the type of exemption claimed here by giving debtors a tool for converting a limited-interest exemption into an in-kind exemption. Thus, the Debtors assert that requiring

---

Gebhart v. Gaughan (In re Gebhart), 621 F.3d 1206, 1210 (9th Cir. 2010); Hefel v. Schnittjer (In re Hefel), No. 11-CV-1010-LRR, 2011 WL 3292929, *5 (N.D. Iowa July 29, 2011); Hopkins v. Idaho State Univ. Credit Union (In re Herter), 456 B.R. 455, 466 (Bankr. D. Idaho 2011); In re Wiczek, 452 B.R. 762, 766 (Bankr. D. Minn. 2011); In re Salazar, 449 B.R. 890, 899 (Bankr. N.D. Tex. 2011); see also In re Massey, No. 41059-MSH, Order on Mot. to Recons. (Bankr. D. Mass. Aug. 1, 2011).

[10] Because this is a joint case, *each* of the debtors here are entitled to claim their exemptions up to the limits set forth by the statute. See 11 U.S.C. § 522(m).

[11] An exemption only protects the Property against liquidation for the benefit of unsecured creditors and does not affect the secured liens on the Property, see Nelson v. Scala, 192 F.3d 32, 33 (1st Cir. 1999). As such, there really is no practical difference between the Debtors' originally claimed exemption of "100% of FMV" and the amended exemption claim of "100% of Equity" – a conclusion with which the Debtors must obviously agree, since the debtors admit their intent continues to be to "exempt the asset itself and not a fixed dollar amount." Resp. to Second Obj, 3.

them to "state the specific dollar amount in the Value of Claimed Exemption column will eviscerate the debtors' right to exercise the strategy approved by the Supreme Court." Resp. to Second Obj., 2. This argument has been raised by debtors in other districts, and has been categorically rejected as a fundamental misinterpretation of Schwab.[12] This Court agrees that "it is a misreading of Schwab to conclude the Court has blessed the use of a designation such as '100% of FMV' [or, as here, '100% of Equity'] as a valid and unobjectionable scheduling of a claimed exemption value where the relevant exempting statute . . . expressly limits the exemption to a maximum cash value." In re Stoney, 445 B.R. at 522.

At its core, Schwab was not about the validity of any particular exemption claim, id. at 2662 n.7, but about *notice* to interested parties as to what exemption in particular property the debtor had actually claimed, and, consequently, whether it "constitute[d] a claim of exemption to which an interested party must object under § 522(l)," id. at 2657. In Schwab, the debtor claimed an exemption in her business equipment in a specific dollar amount, which amount was within the monetary limits set by the applicable § 522(d) provisions. Id. at 2658. The debtor also listed the value of the equipment in an equal amount. Id. When the Chapter 7 trustee moved to sell the equipment (which was actually worth more than the debtor had estimated), the debtor strenuously objected. Id. Apart from its obvious utility, the debtor claimed that the equipment held sentimental value for her, id. at 2658 n.3, and she had always intended to keep the equipment, id. at 2658.

The debtor argued that, by claiming the exemption in an amount equal to the

---

[12] See, e.g., In re Hefel, 2011 WL 3292929, at *5; In re Wiczek, 452 B.R. at 767, 768; In re Stoney, 445 B.R. 543, 522 (Bankr. E.D. Va. 2011); In re Salazar, 449 B.R. at 899; In re Winchell, No. 10-05827-PCW13, 2010 WL 5338054, *2 (Bankr. E.D. Wash. Dec. 20, 2010).

10

equipment's estimated value, she had exempted the equipment in its entirety, removing the equipment from the bankruptcy estate and putting it beyond the reach of her creditors. Id. The trustee, on the other hand, maintained that he had no obligation to object to the claimed exemption in order to preserve for the bankruptcy estate any value in the equipment above the dollar amount claimed as exempt by the debtor, because the amount claimed as exempt fell within the statutory limits. Id. at 2660. Accordingly, the trustee argued, the debtor exempted only a limited monetary interest in the equipment and was entitled only to a distribution equal to that dollar amount. Id.

The Supreme Court sided with the trustee, holding that the trustee had no duty to object to the exemption in order to preserve excess value for the estate. The Schwab Court rejected the debtor's "sentimental value" argument as having no relevance to statutory interpretation, id. at 2658 n.3,[13] and held that the debtor had not, in fact, claimed the asset itself as exempt, id. at 2663. Rather, she had only exempted a specified monetary interest in the equipment, consistent with the dollar limits established by the relevant statutory provisions. Id.

The dispute here arises from a passage found later in Schwab in which the Court again addressed the debtor's insistence that she had intended to remove the entire asset from the bankruptcy estate and that her Schedule C adequately provided notice of that intent. Id. at 2668. The Court disagreed for the reasons stated earlier in the opinion, and responded by positing, *by way of example*, the type of language that *would* put parties on notice that the debtor intended to exempt an entire asset and not just a

---

[13] Similarly, here, while the Court sympathizes with the Debtors' desire to keep the Property, that desire alone cannot dictate the Court's interpretation of the Code. Schwab, 130 S.Ct. at 2658 n.3 ("Because the Code imposes limits on exemptions, many debtors who seek to take advantage of the Code are, no doubt, put to the similarly difficult choice of parting with property of 'extraordinary sentimental value.'").

11

limited interest in the asset:

> Where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as "full fair market value (FMV)" or "100% of FMV."

Id.

The Court's discussion in this passage has nothing to do with the "proper" way to claim a particular exemption under a particular exemption statute. The Court was merely demonstrating the type of language that may be used to show the world that the debtor is attempting to exempt an asset in its entirety, regardless of its actual value. Id. The Schwab Court was *not*, as the Debtors have argued, outlining a procedure by which an exemption claimed under a limited-interest exemption statute could be legitimately converted into an exemption in-kind. Thus, to require the Debtors here to amend Schedule C to state a specific dollar value for their claimed (d)(1) exemption does not "eviscerate" any "rights" established under Schwab and does not prevent the Debtors from "employing" any legitimate "strategy" suggested by the Supreme Court.[14]

---

[14] The Court is aware of the Administrative Office of the U.S. Courts' preliminary draft of a proposed amended Schedule C (currently submitted for public comment) that allows debtors the option to check a box under the "value of claimed exemption" column stating "Full fair market value of the exempted property." See Preliminary Draft of Proposed Amendments to the Federal Rules of Practice and Procedure (August 2011), available at http://www.uscourts.gov/ uscourts/RulesAndPolicies/rules/Publication%20Aug%202011/Brochure.pdf (last visited Jan. 13, 2012); Report of Advisory Committee on Bankruptcy Rules (Revised June 21, 2011), available at http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Publication%20Aug% 202011/BK_Report.pdf (last visited Jan. 13, 2012). The proposed amended form has "not been submitted to or considered by the Judicial Conference or the Supreme Court." Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Memorandum to the Bench, Bar, and Public (August 12, 2011), available at http://www.uscourts.gov/uscourts/ RulesAndPolicies/rules/Publication%20Aug%202011/Memo_to_Bench_Bar_2.pdf (last visited Jan. 13, 2012). The Court does not see the proposed amended Schedule C as inconsistent with its holding in this case. As noted, some exemptions *may* be permissibly claimed in kind, and the proposed form recognizes that by providing a clearer method for debtors to indicate an intent to claim an entire asset exempt. And if a debtor checks the box next to "Full fair market

Indeed, the Schwab Court plainly anticipated that such "100%" exemptions would not be appropriate in every instance (i.e., where the statute limited the exemption to a maximum monetary interest in the asset), which is why the Court immediately followed the above-quoted passage with the following:

> Such a declaration will encourage the trustee *to object promptly* to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits. If the trustee fails to object, or if the trustee objects and the objection is overruled, the debtor will be entitled to exclude the full value of the asset. If the trustee objects and the objection is sustained, the debtor will be required either to forfeit the portion of the exemption that exceeds the statutory allowance, or to revise other exemptions or arrangements with her creditors to permit the exemption. See Fed. Rule Bkrtcy. Proc. 1009(a). Either result will facilitate the expeditious and final disposition of assets . . . .

Id. (emphasis supplied).

Furthermore, the Supreme Court also expressly refuted the Debtors' repeated claim here that Schwab permits them to exempt the Property in its entirety because they are entitled to the "certainty of knowing whether or not [the Debtors] may keep [the] exempted property."[15] Schwab, 130 S.Ct. at 2668. This quote adopted by the Debtors is not from the Supreme Court's explanation in support of its holding in Schwab, but from the Supreme Court's citation to the Schwab *debtor's* brief. And not only did the debtor's position (which the Schwab Court called her "clouded title" argument) fail to persuade the Court, but was ultimately determined to be based on faulty assumptions:

---

value of the exempted property" but the relevant statute creates only a limited-interest exemption, nothing prohibits interested parties from objecting to that exemption claim. The utility of the proposed amended Schedule C is in its ability to provide clear notice of the debtor's intent and to avoid the type of dispute that arose in Schwab. Furthermore, to the extent the proposed amended Schedule C could be interpreted to allow debtors to legitimately claim an in-kind exemption where the statute provides for a limited-interest exemption, the form would not trump the plain statutory language. See Schwab, 130 S.Ct. at 2660 n.5 ("The [bankruptcy] forms . . . must be read in light of the Bankruptcy Code provisions . . ., and must yield to those provisions in the event of conflict.").

[15] See Resp. to First Obj., 3; Resp. to Second Obj., 3; Debtors' Reply Brief, 6.

> [The debtor's] clouded title argument arises only if one accepts her flawed conception of the exemptions in this case. According to [the debtor], "once the thirty-day deadline passed without objection" to her claim, she was "entitled to know that she would emerge from bankruptcy with her cooking equipment intact." Brief for Respondent 57. There are two problems with this argument. First, it assumes that the property she claimed as exempt was the full value of the equipment. That assumption is incorrect for the reasons we explain. Second, her argument assumes that a claim to exempt the full value of the equipment would, if unopposed, entitle her to the equipment itself as opposed to a payment equal to the equipment's full value. That assumption is at least questionable. Section 541 is clear that title to the equipment passed to Reilly's estate at the commencement of her case, and §§ 522(d)(5) and (6) are equally clear that her reclamation right is limited to exempting an interest in the equipment, not the equipment itself. Accordingly, it is far from obvious that the Code would "entitle" Reilly to clear title in the equipment even if she claimed as exempt a "full" or "100%" interest in it (which she did not).

Id. at 2668 n. 21.

Having determined that nothing in Schwab permits the Debtors here to claim 100% of the equity in the Property as exempt – since § 522(d)(1) allows them to exempt only an "interest" in the Property "not to exceed $21,625," 11 U.S.C. § 522(d)(1) – the question now is, as one Court has put it, "What then?" In re Salazar, 449 B.R. at 898. According to the Debtors, the Court must now conduct an evidentiary hearing to establish the value of the Property as of the Petition Date in order to determine whether their "100% of Equity" exemption actually exceeds the statutory limit (i.e., whether the equity in the Property exceeds the dollar limit imposed by § 522(d)(1)).

In In re Moore, the bankruptcy court, in ruling on a similar exemption objection, concluded that the "next step" was to conduct an evidentiary hearing at which the Debtors would have the "burden of going forward to establish at least a 'plausible basis for'" their exemption claim, and the Trustee would have the "burden of proving that the claimed exemption exceed[ed] the statutory limit.'" 442 B.R. 865, 868 (Bankr. N.D. Tex. 2010). Most (if not all) courts to have addressed the issue since the In re Moore

14

decision, however, have taken the approach that an evidentiary hearing is unnecessary, since "an exemption claim of '100% of FMV' is a facially valid objection [where] the debtor has failed to claim a set amount as contemplated by the exemption statute allowing the exemption.'" In re Salazar, 449 B.R. at 898.[16]  This Court agrees with the majority and "fails to see the necessity of a hearing under the circumstances." Id.  "A hearing on value is unnecessary if the objection is limited to the manner in which the debtor has claimed the exemption." Id. at 899.[17]

Not only is the Debtors' "100% of Equity" exemption in the Property facially inconsistent with the statutory provision on which the Debtors rely in claiming the exemption (thus obviating the need for any further hearing on the matter), but if the Debtors seek an evidentiary hearing in an effort to remove the Property from the bankruptcy estate at this point in the case, their efforts are fruitless.  Even if the Debtors' equity in the Property, based on the Property's value as of the Petition date, is not more than the allowable exemption, the Property *still remains property of the bankruptcy estate* – all that is removed from the estate is the "*interest in the property* up to the value of the claimed exemption." In re Evenson, No. 05-37920-svk, 2010 WL 4622188, *2

---

[16] See In re Hefel, 2011 WL 3292929, at *4; In re Winchell, 452 B.R. at 767; see also Schwab, 130 S.Ct. at 2662 n.8 ("Challenges to the valuation of what the dissent terms 'exemptible assets' are not covered by Rule 4003(b) in the first place.").

[17] In both the First and Second Objection, the Trustee also quarreled with the amount of the exemptions Mr. Luckham had claimed in the Property and other assets.  Neither the objections nor the responses were especially elucidating on the exact nature of that dispute, and the parties did not address that issue directly at either the First or Second Hearings.  With the benefit of the Debtors' forthcoming amended Schedule C, the Trustee's issues regarding the total dollar amount of exemptions claimed will (hopefully) be better clarified or resolved.  If the Trustee's concerns remain, she may file an objection to the further amended Schedule C within 30 days of its filing.  See Fed. R. Bankr. P. 4003(b)(1).

(Bankr. E.D. Wis. Nov. 3, 2010).[18]

While the Debtors are correct that their exemptions should be determined with reference to the Petition Date, see Cunningham, 513 F.3d at 324, this does not mean that the Property's value is for all purposes determined as of the date of filing. As the Trustee points out, and the Debtors concede, in a Chapter 13 case, property acquired postpetition (including any increase in value of prepetition property) is property of the bankruptcy estate. See 11 U.S.C. § 1306(a)(1); Barbosa v. Soloman, 235 F.3d 31, 36 (1st Cir. 2000). And while a Chapter 13 debtor cannot be forced to modify a confirmed plan or sell or refinance property due to an increase in equity postpetition, see In re Trumbas, 245 B.R. 764, 765, 767 (Bankr. D. Mass. 2000), if a debtor voluntarily chooses to do so, unsecured creditors are entitled to a distribution of the funds exceeding the amount of secured claims and the debtor's valid exemption in the property. See Barbosa, 235 F.3d at 41; In re Kieta, 315 B.R. 192, 198 (Bankr. D. Mass. 2004); see also In re Massey, No. 11-41059-MSH, Order on Mot. to Recons. (Bankr. D. Mass. Aug. 1, 2011). The Trustee's concern regarding postpetition equity is accordingly well-taken. It may be that the Debtors never refinance or sell the Property to liquidate the Debtors' equity. And their equity in the Property may never increase above the exemption limits set by § 522(d)(1). But it is no red herring for the Trustee to object to the Debtors' "100% of Equity" exemption claim *now* (and especially in light of the Debtors' stated intent to exempt the Property in kind) in order to preserve for the bankruptcy estate any value that may be realized in the future.[19]

---

[18] See also In re Herter, 456 B.R. at 466; In re Wiczek, 452 B.R. at 767, 768; In re Salazar, 449 B.R. at 900.

[19] The concerns raised by the Debtor anent the impropriety of Chapter 7 trustees leaving

16

IV.  CONCLUSION

For the foregoing reasons, the Court holds that, where the statutory basis for a debtor's claim of exemption provides only for an exemption of an interest in certain property up to a specific dollar amount, the "value of claimed exemption" must be identified as a monetary value. Nothing in Schwab v. Reilly, 130 S.Ct. 2652 (2010), dictates otherwise; indeed, Schwab itself establishes the very principles which compel this conclusion. Accordingly, the Court will issue an order sustaining the Trustee's Second Objection to the Debtors' claimed exemption in the Property and will require the Debtors to file a further amended Schedule C.[20]  An order in conformity with this memorandum shall issue forthwith.

DATED: January 13, 2012                    By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge

---

bankruptcy estates open in hopes that they can eventually realize on a potential postpetition equity increase is not only irrelevant here, but cannot form the basis for ignoring the plain limits on exemptions set forth in the Code. See, e.g., In re Gebhart, 621 F.3d at 1212 & n.6 (duty to police Chapter 7 trustees falls on the United States Trustee, and debtors may petition the court to compel abandonment of property under § 544(b)).

[20] The Debtors' Motion to Amend will be allowed, as amendments to debtors' schedules are generally permitted. See Fed. R. Bankr. P. 1009(a). But granting leave to amend a schedule does not equate to approval of its contents, and does not preclude the Court from sustaining objections to the schedule. See,e.g., Fed. R. Bankr. P. 4003(b)(1) (a party in interest may object to the "list of property claimed as exempt" "within 30 days after any amendment to the list or supplemental schedules is filed").

17